HELENA COTTON OIL COMPANY, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3519–71.    Filed April 25, 1973.

*David Solomon*, for the petitioner.
*Richard J. Neubauer*, for the respondent.

### OPINION

DAWSON, *Judge:* Respondent determined the following deficiencies in petitioner's Federal income taxes:

| TYE July 31— | Deficiency |
|---|---|
| 1965 | $2, 915. 38 |
| 1966 | 2, 619. 19 |
| 1967 | 1, 269. 09 |

Some issues are not in dispute and the parties have agreed that there are certain deficiencies for the first 2 taxable years. The only issue remaining for decision relates to respondent's disallowance of an investment credit carryback from the fiscal year ended July 31, 1968. We must decide whether the petitioner, a cooperative organization which paid no patronage dividends or made other distributions during the fiscal year ended July 31, 1968, in which it was otherwise entitled to an investment credit under section 38, I. R. C. 1954,[1] should be denied an investment credit under section 46 (d) because it incurred a net operating loss in that year.

All of the facts are stipulated. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. The pertinent facts are set forth below.

Helena Cotton Oil Co., Inc. (herein called petitioner), is an Arkansas corporation whose principal place of business was in Helena, Ark., when it filed its petition in this proceeding. Petitioner filed its Federal corporation income tax returns for the taxable years ended July 31, 1965, through July 31, 1968, with the district director of internal revenue at Little Rock.

The petitioner was incorporated on August 1, 1952, under the laws of Arkansas as a farmers purchasing and marketing cooperative. Its principal business activity during the fiscal years ended July 31, 1965, through July 31, 1968, was the crushing and refining of cottonseed and soybeans purchased from its patrons.

The petitioner computes its taxable income in accordance with the provisions of sections 1381 through 1388 of the Code. Its taxable income for the fiscal years ended July 31, 1965, July 31, 1966, July 31, 1967, and July 31, 1968, was computed in accordance with those provisions.

The petitioner computes its income by the accrual method of accounting for each fiscal year ending on July 31.

During the fiscal years ended July 31, 1965, July 31, 1966, July 31, 1967, and July 31, 1968, the petitioner entered into contracts with its customers which provided as follows: That the petitioner would buy all of the oleaginous seed offered for sale to it by its customers during the life of the contract; that the price paid the customers for the seeds would vary from day to day and would be fixed by the petitioner; that the petitioner would make rebates to its customers; that any loss resulting from operations would be charged against the customers'

---

[1] All statutory references herein are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

accounts in the same ratio and manner as rebates would be distributed to the customers.

The basis for making rebates to customers is authorized in the petitioner's bylaws and is stated in the contracts between the petitioner and its customers as follows:

(a) after setting aside reasonable reserves for depreciation and other valuation purposes, and allocating sums from the earnings sufficient to pay dividends on preferred stock and retire all State and Federal income and excess profit taxes, as well as any other tax which is measured by the net earnings of "Corporation" and excluding earnings accruing from business conducted with "Non-customers," the remaining net earnings of "Corporation" shall be allocated and distributed to "Customer" in the direct proportion which the business conducted by him with "Corporation," bears to the whole business that "Corporation" had conducted with all of its "Customers."

(b) "Customer" shall participate in these rebates or patronage dividends only to the pro-rata extent that his seed delivered to "Corporation" bears to the whole amount of similar seed delivered to "Corporation."

The taxable income per return, the rebates per return, and the taxable income per return increased by the rebates per return for the fiscal years ended July 31, 1965, July 31, 1966, July 31, 1967, and July 31, 1968, are as follows:

| TYE July 31— | Taxable income per return | Rebates per return | Taxable income increased by rebates |
|---|---|---|---|
| 1965 | $16,862.34 | $564,971.18 | $581,833.52 |
| 1966 | 16,324.50 | 439,813.54 | 456,138.04 |
| 1967 | 12,954.50 | 52,554.83 | 65,509.33 |
| 1968 | None | None | None |

The rebates per return qualify as distributions to patrons under section 1382. No rebates were determined or paid for the fiscal year ended July 31, 1968.

During the fiscal year ended July 31, 1968, the petitioner sustained a loss from operations of $80,170.77. In accordance with the provisions of section 5 of article VII of the petitioner's bylaws, the loss of $80,170.77 for the fiscal year ended July 31, 1968, was charged back to the patrons and no taxable income or loss was reported by the petitioner in its return for that fiscal year.

The maximum investment credit allowable, the allowable investment credit based on the qualified investment per return, and the investment credit available for investment credit carrybacks are as follows for the fiscal years ended July 31, 1965, July 31, 1966, and July 31, 1967:

| | FYE July 31— | | |
| --- | --- | --- | --- |
| | 1965 | 1966 | 1967 |
| Maximum amount of investment credit allowable | $1,470.83 | $1,568.88 | $2,849.99 |
| Allowable investment credit for the year based on qualified investment for the year | 23.02 | 14.48 | 1,580.90 |
| Amount available for carryback of investment credit | [1] 1,447.81 | 1,554.40 | 1,269.09 |
| Limitation [1] | [1] 676.49 | | |

[1] *Limitation*—The amount available for carryback of investment credit to the fiscal year ended July 31, 1965, is reduced to $676.49 because the petitioner erroneously claimed an investment credit of $794.34 for the fiscal year ended July 31, 1965, instead of the correct amount of $23.02, an excess of $771.32. The statute of limitations has expired for the assessment and collection of that excess; but such excess reduces the amount available for carryback of investment credit to $676.49.

The petitioner erroneously claimed an investment credit of $404.64 for the fiscal year ended July 31, 1966, instead of the correct amount of $14.48. There is a deficiency of $390.16 for the fiscal year ended July 31, 1966, as a result of this.

The petitioner erroneously claimed an investment credit of $7,994.40 for the fiscal year ended July 31, 1967, instead of the correct amount of $1,580.90. The tax liability before investment credit shown on the return for the fiscal year ended July 31, 1967, was $2,849.99, and the investment credit claimed in the return for the fiscal year ended July 31, 1967, was $2,849.99, resulting in no tax paid for the fiscal year ended July 31, 1967. The balance of $5,144.41 was carried back on claims for refund to the fiscal years ended July 31, 1965, and July 31, 1966, in the amounts of $2,915.38 and $2,229.03, respectively. The $2,915.38 carried back to the fiscal year ended July 31, 1965, was equal to the entire tax paid for that year. The $2,229.03 carried back to the fiscal year ended July 31, 1966, was equal to all but $957.72 of the tax paid for that year. Both refunds have been made, $2,915.38 for the fiscal year ending July 31, 1965, and $2,229.03 for the fiscal year ending July 31, 1966. The refunds were erroneously made. No refunds, in any amount, should have been made for an investment credit carryback from the fiscal year ended July 31, 1967. And there is a deficiency of $1,269.09 for the fiscal year ended July 31, 1967, as a result of the erroneous investment credit claimed for that year.

For the fiscal year ended July 31, 1968, the petitioner claimed a qualified investment of $160,635.76 and an investment credit of $11,244.50. No tax liability was shown on the return for that fiscal year and the petitioner carried back the investment credit to the fiscal year ended July 31, 1966, by filing a claim for refund for $957.72, which was the only unrefunded amount of tax paid for the fiscal years ended July 31, 1965, July 31, 1966, and July 31, 1967. That amount has not been refunded. The balance of the $11,244.50, over and above the $957.72, was treated as an investment credit carryover by the petitioner.

The maximum amount of investment credit that may be carried back to the fiscal year ended July 31, 1965, is $676.49. The maximum amount of investment credit that may be carried back to the fiscal year ended July 31, 1966, is $1,554.40. The maximum amount of investment credit that may be carried back to the fiscal year ended July 31, 1967, is $1,269.09. These amounts are after the assessment of deficiencies for the erroneous refunds of $2,915.38 for the fiscal year ended July 31, 1965, and $2,229.03 for the fiscal year ended July 31, 1966, after the assessment of deficiencies for the erroneous computations of investment credits in the amounts of $390.16 for the fiscal year ended July 31, 1966, and $1,269.09 for the fiscal year ended July 31, 1967, and after disallowance of the claim for refund for $957.72 for the fiscal year ended July 31, 1966.

It is stipulated that an opinion in favor of the petitioner will result in the following deficiencies:

| | Deficiency |
| --- | --- |
| July 31, 1965 | $2,238.89 |
| July 31, 1966 | 1,064.79 |
| July 31, 1967 | None |

No overpayments will result from an opinion in favor of the petitioner. The computations are as follows:

| | FYE July 31— | | |
| --- | --- | --- | --- |
| | 1965 | 1966 | 1967 |
| Deficiency from erroneous computation of investment credit for the taxable year (no deficiency for fiscal year ended July 31, 1965, as statute of limitations expired under Code sec. 6501 for that year): Investment credit per return | | $404.64 | $2,849.99 |
| Investment credit as corrected (per statutory notice) | | 14.48 | 1,580.90 |
| Net amount | | 390.16 | 1,269.09 |
| Erroneous refund based on erroneous carryback of investment credit from the fiscal year ended July 31, 1967 | $2,915.38 | 2,229.03 | |
| Totals | 2,915.38 | 2,619.19 | 1,269.09 |
| Investment credit carryback from the fiscal year ended July 31, 1968 | 676.49 | 1,554.40 | 1,269.09 |
| Deficiencies | 2,238.89 | 1,064.79 | 0 |

It is also stipulated that an opinion in favor of the respondent will result in deficiencies as shown in the statutory notice of deficiency; that no deficiency and no overpayment will result from the fiscal year ended July 31, 1968, whether the opinion is in favor of the petitioner or the respondent; and that the claim for refund for $957.72 for the fiscal year ended July 31, 1966, is not allowable, whether the opinion is in favor of the petitioner or the respondent.

To our knowledge the question in controversy has not been previously litigated.

Section 46(a)(1) of the Code provides that the amount of the investment credit allowed under section 38 of the Code for a taxable year shall be equal to 7 percent of the qualified investment. Section 46(d)(1)(C) of the Code provides that in the case of a cooperative organization described in section 1381(a) of the Code, the qualified investment and the $25,000 amount specified in section 46(a)(2)(A) and (B) of the Code shall equal its "ratable share" of such items.

Section 46(d)(2)(C) of the Code provides that, in the case of a cooperative organization, the "ratable share" of such items shall be determined by a ratio the numerator of which is its taxable income and the denominator of which is its taxable income increased by amounts to which section 1382(b) or (c) of the Code applies and similar amounts the tax treatment of which is determined without regard to subchapter T of chapter 1 of the Code. See also sec. 1.46-4(c), Income Tax Regs.

In order that there be a "credit earned" for a taxable year within the meaning of section 1.46-1(a) of the regulations there must be a qualified investment in section 38 property. The determination of an unused investment credit for carryback and carryover purposes under section 46(b) of the Code and section 1.46-2 of the regulations is based upon "credit earned" for the taxable year. If a cooperative's ratable share of qualified investment in section 38 property under section 1.46-4(c) of the regulations is zero, then its "credit earned" under section 1.46-1(a) of the regulations would also be zero. Therefore, there would be no "unused" investment credit for the taxable year to be carried back or carried over to other taxable years.

Respondent contends that the petitioner does not have an unused investment credit in the fiscal year ended July 31, 1968, that may be carried back to the 3 prior fiscal years because its "ratable share" of the qualified investment for the fiscal year ended July 31, 1968, is zero and the investment credit is zero. Petitioner, on the other hand, maintains that it is entitled to the benefit of the entire amount of qualified investment for the fiscal year ended July 31, 1968, and then reduced to the extent patronage dividends were paid. It is asserted that "Congressional intent and sound logic" support this view.

We agree with the respondent. A cooperative is a special class of taxpayer that is not allowed the full investment credit. The allowance is reduced in proportion to the special benefits received. See H.Rept. No. 1447, 87th Cong., 2d Sess., p. 15 (1962), 1962-3 C.B. 419; S.Rept. No. 1881, 87th Cong., 2d Sess., p. 20 (1962), 1962-3 C.B. 726. The amount by which the allowance is reduced is based on the taxpayer's ratable share of the qualified investment, which is determined by applying a ratio to the qualified investment. The ratio is arrived at by divid-

ing the taxable income by the taxable income increased by rebates. See secs. 46(d)(1)(C) and 46(d)(2)(C); and sec. 1.46–4(c), Income Tax Regs.

Here the petitioner's taxable income for the fiscal year ended July 31, 1968, was zero. It made no rebates during that fiscal year so its taxable income increased by rebates was also zero. Thus the ratio is $\frac{0}{0}$ and the petitioner's ratable share of the qualified investment of $160,635.76 for the fiscal year ended July 31, 1968, is $160,635.76 multiplied by $\frac{0}{0}$. Since the denominator of a whole number is 1, the qualified investment may be expressed mathematically as $\frac{160,635.76}{1}$. In applying the ratio to the qualified investment the numerator of $160,635.76 is multiplied by the numerator of 0 in the ratio, which equals 0. The denominator of 1 is multiplied by the denominator of 0 in the ratio, which also equals 0. Accordingly, the petitioner's ratable share of the qualified investment is $0$. This multiplied by the 7 percent provided in section 46 (a)(1) gives an investment credit of $\frac{0}{0}$. Zero divided by zero will not produce a meaningful result by which an amount may be multiplied. Therefore, there is no qualified investment and no investment credit for the fiscal year ended July 31, 1968; and there is no unused investment credit carryback to the fiscal years ended July 31, 1965, July 31, 1966, and July 31, 1967.

In each of the fiscal years ended July 31, 1965, July 31, 1966, and July 31, 1967, the petitioner's qualified investment exceeded the amount that could be availed of for the investment credit because of the limitations under sections 46(d)(1)(C) and 46(d)(2)(C). This is the way Congress intended it. The qualified investments and the amounts utilized for investment credits for these years are as follows:

| | FYE July 31— | | |
| --- | --- | --- | --- |
| | 1965 | 1966 | 1967 |
| Qualified investment per return | $11,347.59 | $5,780.53 | $114,205.68 |
| Qualified investment utilized for allowable investment credit: | | | |
| Fiscal year ended July 31, 1965: | | | |
| $11,347.59 $\times \frac{16,862.34}{581,833.52}=$ | 328.87 | | |
| Fiscal year ended July 31, 1966: | | | |
| $5,780.53 $\times \frac{16,324.50}{456,138.04}=$ | | 206.88 | |
| Fiscal year ended July 31, 1967: | | | |
| $114,205.68 $\times \frac{12,954.50}{65,509.33}=$ | | | 22,584.23 |
| Qualified investment unavailable for investment credit | 11,018.72 | 5,573.65 | 91,621.45 |

The petitioner was able to use only a small amount of its qualified investment for the investment credit in the fiscal years ended July 31, 1965, July 31, 1966, and July 31, 1967.

Without the limitations of sections 46(d)(1)(C) and 46(d)(2)(C) the petitioner would have had investment credits of $794.34 for the fiscal year ended July 31, 1965, $404.64 for the fiscal year ended July 31, 1966, and $7,994.40 for the fiscal year ended July 31, 1967. But the taxable income over the 3-year period ending July 31, 1967, of $16,862.34 (for the fiscal year ended July 31, 1965), $16,324.50 (for the fiscal year ended July 31, 1966), and $12,954.50 (for the fiscal year ended July 31, 1967), and taxable income plus rebates over that period of $581,833.52 (for the fiscal year ended July 31, 1965), $456,138.04 (for the fiscal year ended July 31, 1966), and $65,509.33 (for the fiscal year ended July 31, 1967), the petitioner was limited in the amounts of its investment credits to $23.02 for the fiscal year ended July 31, 1965, $14.48 for the fiscal year ended July 31, 1966, and $1,580.90 for the fiscal year ended July 31, 1967. The petitioner contends, however, that with no change in taxable income or taxable income plus rebates over the *4-year period* ending July 31, 1968, it is entitled to additional investment credits in the *3-year period* that it never could have received in the first place.

Contrary to petitioner's contention, sections 46(d)(1)(C) and 46(d)(2)(C) do not provide for a reduction in the full amount of qualified investment. They set forth the statutory formula for computing the petitioner's *ratable share* of qualified investment. The full amount of qualified investment is never taken into account in computing the investment credit of a cooperative unless the statutory formula comes out to 1 divided by 1. For 1 divided by 1 is 1. But 0 divided by 0 is not 1; it is, in the words of petitioner, an indeterminate amount. And, as previously indicated, the qualified investment multiplied by an indeterminate amount does not give a meaningful result. Consequently, the petitioner has not proved how much, if any, its ratable share of the qualified investment is.

The petitioner states that the legislative history accompanying the Revenue Act of 1962 reveals that section 46(d) was designed to reduce the investment credit allowable to a cooperative to the extent that its income was taxed to others because of patronage dividends or other distributions. While all or part of a cooperative's income may be taxed to others because of patronage dividends or other distributions, this does not mean that all or part of the qualified investment is passed on to the patrons. A cooperative is not treated like an estate or trust for purposes of the investment credit. The qualified investment which is not a part of the cooperative's ratable share is not allowed to anyone. It is lost forever. In the case of an estate or trust the qualified invest-

ment is allowed in full to the estate or trust and its beneficiaries. The qualified investment may be allowed entirely to the estate or trust or entirely to the beneficiaries, or it may be apportioned between the estate or trust and its beneficiaries. And none of it is lost. See H. Rept. No. 1447 and S. Rept. No. 1881, *supra.* However, a cooperative's ratable share of the qualified investment is not established by the extent that its income is taxed to others; it is established by the extent that the cooperative is treated as a regular taxpaying corporation, and the rest is lost. If a cooperative has income of $500,000 and distributes $450,000 in patronage dividends, it is treated as a regular taxpaying corporation to the extent of 10 percent of its income ($50,000 undistributed income divided by $500,000 total income). And thus the investment credit is allowed to the extent of 10 percent of the qualified investment, and the other 90 percent is lost forever.

In the regular course of its operations a cooperative receives only a small investment credit because only a small part of its income is taxed like that of a regular taxpaying corporation. But a cooperative does not suddenly acquire the full status of a regular taxpaying corporation simply by incurring a loss during one of its years of operation. It is still a cooperative and it is still entitled only to a ratable share of the investment credit. Its ratable share in a loss year is nothing because the cooperative is not treated as a regular taxpaying corporation in a loss year. It is treated as a cooperative in a loss year.

Accordingly, we hold in these circumstances that the petitioner is not entitled to an unused investment credit in the fiscal year ended July 31, 1968, which may be carried back to the 3 prior fiscal years.

*Decision will be entered under Rule 50.*