FARM BUREAU SERVICES,
INC., Plaintiff,

v.

UNITED STATES of America,
Defendant.

No. G80–890 CA5.

United States District Court,
W. D. Michigan, S. D.

Sept. 24, 1982.

Gregory L. McClelland, Dickinson, Wright, McKean, Cudlip & Moon, Lansing, Mich., for plaintiff.

John A. Smietanka, U.S. Atty., Grand Rapids, Mich., John A. Dicicco, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

---

**1280**

## OPINION

HILLMAN, District Judge.

This is a case in which Farm Bureau (taxpayer) seeks to recover $145,225, plus interest, on the basis of an alleged wrongful denial by the government of the Bureau's claim for a tax refund. Farm Bureau claims to be entitled to the money because it was allegedly over-assessed by that amount for its 1974 income tax. Jurisdiction is based on 28 U.S.C. §§ 1340 and 1396(a)(1).

The complaint states that the Internal Revenue Service (IRS) wrongfully denied plaintiff $145,225 in earned but unused tax credits that had accumulated during the period 1967–1972. The case has been submitted to the court for judgment upon the basis of facts and exhibits set forth in a stipulation between the parties filed August 13, 1981, and upon the basis of legal memoranda filed by the parties. The court having had the benefit of oral argument by the parties, and having examined thoroughly the arguments and authorities, enters the following findings of fact and conclusions of law in accordance with Fed.R.Civ.P. 52(a).

## I.  FINDINGS OF FACT

The parties agree that this dispute is based upon the following facts. Taxpayer is a "cooperative" subject to Subchapter T of the Internal Revenue Code (26 U.S.C. § 1381, et seq.). During the years in issue, taxpayer was an agricultural cooperative engaged in the business (for profit) of furnishing farm supplies to and buying farm supplies from its patrons. Taxpayer is a Michigan corporation, with its principal offices in Lansing, Michigan. It filed its income tax returns on the basis of a July 1—June 30 fiscal year.

In each of the fiscal years 1967 through 1972, taxpayer had no taxable income, reporting instead a net operating loss on its federal income tax return. In other words, its tax deductions exceeded its taxable income.[1] During each of these years, however, taxpayer earned a total of $145,225 of investment tax credits.[2] By attempting to carry these tax credits forward to its 1974 income tax return, taxpayer became involved in a dispute with the IRS that has culminated in this lawsuit.

In March, 1975, taxpayer filed its federal income tax return for fiscal 1974, indicating a tax due of $546,696. This amount was assessed on March 21, 1975. In computing its tax liability for 1974, however, taxpayer claimed an investment tax credit in the amount of $160,456. During a 1977 audit of taxpayer's 1974 return, the IRS disallowed $146,182 of the investment credit claimed by taxpayer, and subsequently made a defi-

---

1. Taxpayer's income before and after net operating loss carryovers were applied was as follows for the fiscal years 1967 through 1972:

|  | Taxable Income (Loss), Line 28 of Tax Return | NOL | Other Deductions | Taxable Income (Loss), Line 30 of Tax Return |
|---|---|---|---|---|
| Fiscal 1967 | (376,489) | — | 5,988 | (382,477) |
| Fiscal 1968 | 104,762 | 127,894* | 3,467 | (26,599) |
| Fiscal 1969 | (710,970) | 31,837 | 6,051 | (748,858) |
| Fiscal 1970 | (86,188) | 748,858 | 13,621 | (848,667) |
| Fiscal 1971 | 179,245 | 848,667 | 15,845 | (685,267) |
| Fiscal 1972 | 203,250 | 694,229 | 13,521 | (504,500) |

*$254,538.00 of the 6–30–67 NOL was carried back.

---

2. The years and amounts of the investment tax credits which taxpayer claimed and sought to carry forward into 1974 were as follows:

| | | | |
|---|---|---|---|
| Fiscal 1967 | $  4,720 | Fiscal 1971 | 908 |
| Fiscal 1968 | 37,523 | Fiscal 1972 | 11,162 |
| Fiscal 1969 | 43,479 | | |
| Fiscal 1970 | 47,433 | Total | $145,225 |

ciency assessment which included the disallowed amount. In July, 1978, taxpayer paid this deficiency assessment.

In December, 1978, taxpayer filed its first claim for a refund, alleging overpayment of $93,285 in 1974 income taxes. This claimed overpayment arose out of alleged earned but unused investment tax credits which taxpayer attempted to carry back to 1974 from 1977. In September, 1979, the IRS allowed this first claim for refund to the extent of $90,952. The subject matter of this first claim is not an issue in the instant lawsuit.

Shortly after filing its first claim for a refund, taxpayer filed a second claim for refund for the alleged overpayment of $145,225 in income taxes for fiscal 1974. In this claim, taxpayer contended it had overpaid its fiscal 1974 tax liability by the amount claimed, basing its argument on its entitlement to apply earned but unused investment tax credits from the period 1967–1972. This claim was disallowed in full.

Taxpayer protested to the Regional Director of Appeals for the Internal Revenue Service challenging the denial of its second claim for refund. That protest was denied on July 18, 1980, and the instant action ensued. In its complaint before this court, taxpayer states that

> "Defendant's wrongful denial of both Farm Bureau's Second Claim for Refund and protest of the denial of the Second Claim for Refund was based upon, *inter alia,* the following error—Defendant erred in determining that the investment tax credit was not available to a qualified farmers cooperative having a net operating loss carryback, for the years in which the investment credit was claimed." [3]

The parties agree that if taxpayer prevails in its claim before this court, it is entitled to a refund of $145,225 plus interest.

## II. APPLICABLE STATUTES

The investment credit provisions of the Internal Revenue Code of 1954 (Sections 38, 46 and 48) allow a credit against income taxes to certain taxpayers who invest in qualified depreciable property (known as "section 38 property").[4] Generally, the amount of the credit for the period here in question is equal to seven percent of the taxpayer's "qualified investment" for a given year.[5] The Congressional objective behind the enactment of the investment tax credit is clear and undisputed:

> "[T]he objective of the investment credit is to encourage modernization and expansion of the Nation's productive facilities and thereby improve the economic potential of the country, with resultant increase in job opportunities and betterment of our competitive position in the world economy."

S.Rep. 1881, 87th Cong. 2d Sess., 1962–63, C.B. 705, 717–18; U.S.Code Cong. & Admin. News 1962, pp. 3304, 3314.

Code Section 46 sets forth various limitations and conditions on the use of investment credits by certain taxpayers. For instance, Section 46(c) provides that a "qualified investment" is the "applicable percentage" of the basis of the property (the exact percentage varies with the useful life of the property). Section 46(b) sets forth certain percentage and dollar limitations on the amount of tax liabilities which the credit may be used to offset—generally, $25,000 of the current year's tax liability plus 25 percent of the current tax liability in excess of

---

**3.** Taxpayer included an alternative theory of relief based on the use of operating loss carryovers. It argues that during years in which it would have had positive taxable income prior to the application of net operating loss carryovers, it should receive the full credit. The decision reached by this court on Count I of taxpayer's complaint renders the alternative theory of relief moot, and this opinion will not address the claim.

**4.** The Tax Reform Act of 1976 made substantial revisions in the investment tax credit provisions of the Code and many of the subsections discussed in this opinion have been redesignated or removed entirely. This opinion discusses the statutes as they existed during the period here in question, i.e., the fiscal years ending June 30, 1967, through June 30, 1974.

**5.** 26 U.S.C. § 46(a)(1).

$25,000. If the amount of the credit earned for a given year and allowable under the statutes is greater than these limitations, the excess credit must be carried back or forward and applied to reduce tax liability in those years to the extent of the limitations imposed. 26 U.S.C. § 46(b).

By qualifying as a farmer's cooperative, taxpayer in this case is subject to tax under Subchapter T of the Code. Cooperatives are not exempt from taxation under Subchapter T, but may be eligible for special deductions under Code Section 1382 for patronage dividends and nonpatronage distributions.[6] These deductions are not available to ordinary business corporations.

Because of the special provisions exempting these 1382 distributions from the cooperative's taxable income, Section 46(d) provides that the "qualified investment" of each eligible property, as well as the $25,000 limitation, must be reduced by an amount equal to what is termed the taxpayer cooperative's "ratable share" of such items.[7] This reduction is designed to prevent the taxpayer from receiving a double benefit from his statutory right to exclude patronage dividends from his taxable income.[8]

The effect of the "ratable share" rule of Section 46(d)(2)(C) is to reduce the investment credit allowable in proportion to the amount of income which is excludable from taxable income. The more that otherwise taxable income is reduced by Section 1382 deductions, the lower the allowable investment credit limits will be. Thus, if during a given year a cooperative having net earnings does not distribute patronage dividends or other deductible 1382 distributions, it is taxable on all of its earnings and is thus entitled to the full amount of the investment credit. The ratable share rule does not effect a reduction in the allowable tax credit.[9]

On the other hand, if a cooperative distributes and deducts one-half of its earnings as patronage dividends, only half of its net income is subject to income tax. Accordingly, its ratable share is 50 percent and it is entitled to only one-half of the investment credit otherwise available.

### III. ISSUE

The issue now before the court is how these provisions of Section 46(d) should apply to a cooperative in tax years when its deductions (other than Section 1382 deductions) exceed its gross income.

It is the government's position that if a cooperative has deductions in excess of gross income, it simply has no taxable income for Section 46 purposes, and therefore, the statutory ratio would produce a "ratable share" of zero.[10]

> (C) in the case of a cooperative organization, the ratio (i) the numerator of which is its taxable income and (ii) the denominator of which is its taxable income increased by amounts to which section 1382(b) or (c) applies and similar amounts the tax treatment of which is determined without regard to subchapter T (sec. 1381 and following)."

**6.** Code Section 1382(b) provides that in determining the taxable income of a cooperative to which Subchapter T applies, "there shall not be taken into account amounts paid during the payment period for the taxable year as patronage dividends...." Section 1382(c) allows such organizations deductions from gross income for certain nonpatronage distributions.

**7.** Code Section 46(d)(2)(C) provides:
> "(d) Limitations with respect to certain persons.—(1) In general.—In the case of—
> (C) a cooperative organization described in section 1381(a), the qualified investment and the $25,000 amount specified under subparagraphs (A) and (B) of subsection (a)(2) shall equal such person's ratable share of such items.
> (2) Ratable share—For purposes of paragraph (1), the ratable share of any person for any taxable year of the items described therein shall be—

**8.** S.Rep. 95–1263, 95 Cong. 2d Sess., 118; U.S. Code Cong. & Admin. News 1978, 6761, p. 6881. The Revenue Act of 1978, P.L. 95–600, eliminates the formula limitation for investment credits for cooperatives. Under current law, the credit is not reduced to reflect the deduction for patronage dividends. See Pub.L. 95–600, § 316(b), 92 Stat. 2829.

**9.** Taxpayer here made no Section 1382(b) or (c) distributions during the period in question.

Plaintiff argues that during each of the years in question, its deductions exceeded its gross income, and thus for purposes of computing the Section 46(d) ratio, it had "negative taxable income." For example, plaintiff reported a net operating loss of $388,594 for fiscal 1967. Since it paid no patronage dividend that year, such loss constitutes both the numerator and the denominator of the ratio and accordingly, the ratable share is one (1), or 100 percent of the qualified investment.[11] Therefore, taxpayer claimed full investment credits for such "negative taxable income" years, using such credits to offset taxable income it had in the three prior years and subsequent years under section 46(b). It was taxpayer's application of these credits to reduce its 1974 income tax liability that cause the IRS to make the deficiency assessment which is the subject of this lawsuit.

## IV. CONCLUSIONS OF LAW

I conclude that Code Section 46(d) limits the amount of investment credit available to a farmer's cooperative only to the extent that the cooperative's taxable income is reduced by Section 1382 deductions. Therefore, the government improperly disallowed taxpayer's Second Claim for a refund. An order shall issue directing the United States to issue a refund to Farm Bureau in the amount of $145,225 plus interest.

## V. DISCUSSION

The government argues that under the Code, a cooperative is not entitled to an investment credit in years in which its deductions exceed its gross income. The IRS contends that to allow such investment credits is inconsistent with the language, legislative history, and purpose of Section 46 and other provisions of the Code. I am convinced, however, that a reasoned application of relevant Code Sections in light of the obvious intent of Congress compels a different conclusion, and that the government's interpretation of these Code sections produces a result contrary to the statutory objectives.

### A. Statutory Language.

On its face, Code Section 46(d)(2)(C) limits the investment tax credit available to a Subchapter T cooperative to a "ratable share," of its qualified investment. This share is to be determined by use of "the ratio (i) the numerator of which is its taxable income and (ii) the denominator of which is its taxable income increased by amounts to which section 1382(b) or (c) applies ..." The dispute over the interpretation of this statute centers on the definition of "taxable income." Plaintiffs contend that use of a negative figure, i.e., the operating loss for a particular year, is consistent with the purpose of the investment credit and with other sections of the Code. The government argues that taxpayer's "negative taxable income" theory provides a benefit unintended by Congress. It permits a cooperative to avoid the 46(d) reductions in the amount of tax credits that can be earned, merely by making their qualified investments in years in which losses occurred. In this manner, the cooperative claims the full measure of his statutory qualified investment and carries it backward or forward.

**10.** The "ratable share" calculation under Section 46(d) would produce the following equation under the government's interpretation of the statute:

$$\text{ratable share} = \frac{\text{zero taxable income}}{\text{zero taxable income} + \text{zero patronage deductions}}$$

The "zero" ratable share thus resulting is multiplied by the qualified investment, producing an investment credit of zero.

**11.** Using 1967 as an example, taxpayer's method of computing the ratable share would produce the following equation:

$$\text{ratable share} = \frac{\text{taxable income } (-388,594)}{\text{taxable income } (-388,594) + \text{zero patronage deductions}} = 1.$$

I find the government's reasoning faulty for several reasons. In the first place, the cooperative does not avoid the statutory reduction merely by making its qualified investments in loss years. The ratio would produce no reduction only if the cooperative paid no patronage dividends in a given year, and the amount of credit earned is in no way related to the level of taxable income (or net operating loss) reported by the cooperative. This is consistent with the intent of Congress, which was to make the credit available to cooperatives on the same conditions under which it would be available to a regular business corporation. In other words, if a cooperative pays no patronage dividends, there is no reason to reduce the available tax credit because no such reduction would be applied to a regular business corporation. If, in later years, a cooperative pays patronage dividends, those dividends will be added to the cooperative's taxable income and will thus reduce the available tax credit that can be earned during that year.[12] But, merely because a cooperative chooses to avoid the reduction in the amount of credit it may earn in a given year by not paying patronage dividends is no reason to deny the organization the carryback and carryover privileges that are available to other taxpayers under 46(b).

Furthermore, the use of a negative figure in the formula is not inconsistent with the purpose of the investment tax credit, nor with the design of the ratio formula itself. In the first place, Congress specifically defined "taxable income" with respect to regulated investment companies and real estate investment trusts. 26 U.S.C. § 46(d)(2). However, it provided no specific definition of the term with respect to cooperatives. Therefore, it seems reasonable to adopt the only general definition of the term contained in the Code, i.e., that found in Section 63: "gross income minus the deductions allowed by this chapter." See *United States v. Foster Lumber Co., Inc.,* 429 U.S. 32, 97 S.Ct. 204, 50 L.Ed.2d 199 (1976). And while the government argues that an excess of deductions over gross income produces "zero taxable income" or "net operating loss" (*see* Code Section 172), Section 46 does not use those terms. Therefore, we must examine the practical effect of the parties' views to determine which is more consistent with the purpose of the statute.

If the government is correct in its view that taxable income may not be a negative number in the Section 46 ratio, then a cooperative's ratable share during a loss year would be zero and it would earn no investment credit for qualified investments made during that year. As taxpayer points out, such a view produces the anomalous result that a corporation with one dollar of net profit for a year may claim the full benefit of the investment credit if it pays no patronage dividends, while the same cooperative with a one dollar loss would receive no benefit from the Section 38 credit.

On the other hand, the government points to an equally absurd possibility that could arise if the taxpayer's concept of "negative taxable income" were always applied: in years where the cooperative takes a loss *and* pays patronage dividends, the ratable share will be greater than one. Nothing in the statute or the legislative history suggests that Congress meant to provide such a benefit to cooperatives.

Thus, it appears that both interpretations of "taxable income" advocated by the parties in this case are capable of producing impractical results. Therefore, the reliance on the statutory language without reference to the legislative intent would lead to no completely satisfactory resolution of this issue.

B. *Congressional Intent.*

The government's position in this case is based on the mistaken proposition that a cooperative's eligibility for the tax credit depends upon its ability (or willingness) to report positive taxable income for the year in which it invests in Section 38 property. In fact, the ratable share formula was put into Section 46 for one purpose and one

12. The rule has since been modified. *See* note 8, *supra.*

purpose only: to deprive cooperatives of the double benefit of patronage dividend deductions from their gross income:

"... [C]ooperatives are taxed as corporations. However, unlike regular corporations, cooperatives are allowed to deduct certain payments and allocations made to patrons and shareholders (sec. 1382(b) and (c)). Patrons are those persons with whom or for whom the cooperative does business on a cooperative basis. With certain exceptions, the patrons include the deductible payments and allocations in their taxable income (sec. 1385). Because of this special treatment, the amount of otherwise allowable investment credit which may be used by a cooperative is limited by a fraction...."

S.Rep. 95–1263, 95 Cong. 2d Sess., 118; U.S. Code Cong. & Admin. News 1978, p. 6881.

Furthermore, the legislative history of the Revenue Act of 1962 reflects the view that the ratable share formula is made necessary not by the prospect of a cooperative reporting a net operating loss, but rather by the deductibility of patronage dividends from gross income:

"[i]n the case of cooperatives, the qualified investment and $25,000 tax liability limitation to be taken into account are reduced in the same proportion in which their taxable income is reduced for patronage dividends ..."

S.Rep. 1881, at 419; U.S.Code Cong. & Admin. News 1962, p. 3323.

Therefore, it is clear that the reduction in the available credit is connected to the deductible patronage dividends, and that Congress intended cooperatives to receive the full benefit of Section 38 investment credits "unless and to the extent that, they receive tax benefits from § 1382 deductions, notwithstanding the fact that section 38 property is placed into service in a loss year." *Farmers Grain Marketing Terminal (AAL) v. United States,* 434 F.Supp. 368, 377

(D.Miss. 1977); c.f. *Farmers Union Marketing & Processing Assn. v. United States,* 77–1 U.S.T.C., para. 9213, (D.Minn. 1977); *Helena Cotton Oil, Inc. v. Commissioner,* 60 T.C. 125 (1973).

In short, the parties agree that Congress intended to give investment credits to cooperatives to the extent they are taxed like regular corporations. However, under the government's interpretation of the ratable share rule, taxpayer here would be deprived of investment credits that would be available to a regular corporation under virtually identical facts. On the other hand, there could arise situations where the use of "negative taxable income" figures in the ratable share formula could produce a result equally unintended by Congress, that is in years when a cooperative reports a net operating loss *and* pays patronage dividends.[13] However, such a situation is not before the court and this case can be resolved fairly and logically without holding that negative numbers may be used in the formula in every case.

## VI. CONCLUSION

Therefore, I conclude that if a regular corporation may earn the Section 38 credit in a loss year and carry such credits backward and forward into gain years, so may a cooperative, at least to the extent that it does not reduce its taxable income by making Section 1382 distributions. There exists no basis in either the statute itself or the legislative history to support a contrary conclusion, and the result reached in this case clearly gives effect to the Congressional purpose of equalizing the benefits of the tax credit to cooperatives and corporations alike.

Therefore, for the reasons cited in the foregoing analysis, judgment shall be entered in favor of plaintiff.

---

**13.** In such years, the government correctly notes that taxpayer would receive a ratable share of greater than one if the concept of "negative taxable income" is plugged into the formula. For this reason, I cannot agree with

the court in *Farmers Grain Marketing Terminal, supra,* when it determined that the notion of negative taxable income was crucial to the validity of the taxpayer's interpretation of the formula. *See,* 434 F.Supp. at 375, n. 10.

JUDGMENT

This case having come before the court for trial upon stipulated facts, and the court being fully informed as to the factual and legal issues to be resolved, and the court having made findings of fact and conclusions of law in accordance with Fed.R.Civ.P. 52(a),

IT IS HEREBY ORDERED that judgment is entered for plaintiff.

IT IS FURTHER ORDERED that plaintiff shall recover from defendant One Hundred Forty-five Thousand Two Hundred Twenty-five Dollars ($145,225.00), plus interest. Costs to be taxed.